UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| **MALCOLM HEAGS,** | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Case No. |
| **US DEPARTMENT OF VETERANS AFFAIRS,** | ) ) ) ) | |
| *Defendant.* | ) ) | **JURY DEMANDED** |

## COMPLAINT

Plaintiff, Malcolm Heags, by and through undersigned Counsel, alleges the following against Defendant, US Department of Veterans Affairs:

### I. NATURE OF THE CLAIMS

This is an action brought to remedy discrimination in employment on the basis of race, age and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*; Americans with Disabilities Act of 1990 as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq*. Plaintiff seeks compensatory and equitable make-whole relief for past deprivation of the rights promised to him under federal and state law.

### II. JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in

1

this District and the events giving rise to the claims alleged occurred in this District.

2. Plaintiff has met the prerequisites for filing suit under Title VII, the ADA, and the ADEA. On March 3, 2021, Plaintiff filed a complaint of discrimination with the VA's Office of Resolution Management. See Exhibit A. According to VA policy, the Plaintiff was entitled to file a complaint in federal court 180 days after filing his complaint if no Final Agency Decision was issued. No Final Agency Decision was issued in this matter.

### III. PARTIES

3. Plaintiff, Malcolm Heags, a 57-year-old black male, was employed as Environmental Management Services Chief at the Hines VA Hospital in Hines, IL (hereinafter, "the Hospital"). The Plaintiff worked for the Department of Veterans Affairs ("VA") for nearly four decades. At all times relevant to this Complaint, Plaintiff was an employee under Title VII, an aggrieved individual under the ADEA and an individual with a "disability" as that term is defined in Section 3(2) of the ADA, 42 U.S.C. §12102(2).

4. At all times herein mentioned, Defendant, is a federal department engaged in commerce or an industry affecting commerce, duly organized, existing and operating within the jurisdiction of this Court. The Defendant is a covered employer under Title VII and is also a covered entity under the ADA, 42 U.S.C. § 12111.

### IV. FACTUAL ALLEGATIONS

5. Plaintiff reaffirms, realleges and restates Paragraphs 1 through 5 above as if fully stated herein.

6. Plaintiff a 57-year old black male.

7. Plaintiff worked for nearly 37.5 years as a federal employee for the Edward Hines, Jr. VA Hospital in Cook County, IL.

8. At the time of his termination, Plaintiff's job was Chief Environmental Services Manager.

9. In July 2020, an article was published reporting that the Hospital hired a third-party contractor, America's Best (hereinafter, "AB") who had a history of sexual offenses.

10. As a result of the article, the Hospital initiated an investigation into facts surrounding the procurement and effectuation of the contract with AB.

11. Plaintiff participated fully in the investigation.

12. Plaintiff was interviewed twice, and provided all documentation requested.

13. However, Plaintiff took a leave of absence to deal with the extreme stress and anxiety he was suffering as a result of the investigation.

14. The investigation was concluded in October 2020, but due to his leave of absence, Plaintiff was not provided the Hospital's results until his return to work in early January 2021.

15. Upon his return, Plaintiff was provided the investigation findings as well as his supervisor's proposal for his termination.

16. The proposal accused Plaintiff of Failure to Effectively Perform Supervisory Duties, Conflict of Interest, and Lack of Candor.

17. It was for these reasons that his supervisor, Mr. Biedelschies, suggested Plaintiff's removal.

18. Notably, the investigation's findings and recommendations did not suggest Plaintiff's removal but instead suggested continuing learning education.

19. The proposal stated Plaintiff failed in his supervisory duties regarding fingerprinting and security of America's Best ("AB") workers.

20. However, Plaintiff rebutted this accusation with the following:

3

a. A memorandum was issued by OPM on March 25, 2020 entitled, "Temporary Procedures for Vetting and Appointment of New Employees during Maximum Telework Period due to Coronavirus Vetting and Appointments Procedures Involving Fingerprints."

b. It stated, in emergency situations and during COVID, fingerprints can be obtained following the initial work if needed.

c. It was in fact the Great Lake Acquisition Center's (hereinafter, "GLAC") responsibility to ensure that all paperwork was filled out and completed properly and it was GLAC's responsibility to inform the facility that contractors are to be fingerprinted.

d. According to the Division Manager of GLAC, there should have been verbiage about fingerprinting in the contract.

e. There was not.

f. The GLAC stated in his testimony there was no need for fingerprinting since they were exempted during the pandemic.

g. Furthermore, if this was a requirement, Veteran's Integrated Services Networks "VISN" Policy Memorandum 10 and 12-05-12R4, dated February 2018, and issued by the VISN in 2018 states that it is the GLAC's responsibility to inform all parties.

h. Also, Plaintiff's subordinates were informed that the contract did not require a background check.

i. When the pandemic started, HR requested that either individuals make an appointment or call first so as no more than three people were allowed in Building 17-HR.

j. Despite this directive, the contractor and three of his employees went to HR and were told they did not need badges as they were temporary contractors.

k. They were turned away.

  l. These individuals were not asked to be interviewed and were never contacted by investigators.

  m. There were email exchanges between the VA and the contractor confirming this fact.

21. The proposal stated that Plaintiff failed in his supervisory duty by assigning Mr. Rommeal Lear as the Point-of-Contact ("POC") for the contractor.

22. However, Plaintiff rebutted this accusation with the following:

 a. As stated in policy, when the contract is under a certain dollar amount and time frame, only a point of contact must be identified.

 b. In this case, the length and dollar amount did not require a Contracting Officer's Representative ("COR"), only a POC.

 c. Thus, it was appropriate to designate Mr. Lear to that position.

 d. Additionally, the GLAC stated even if the COR certification had expired, it was not important as it was not needed for this contract.

 e. Alternatively, if a COR is needed, employees have six months after the official letter from the GLAC to update their training requirements.

 f. Mr. Lear had reached out to the GLAC to request training.

 g. Several emails (specifically to GLAC employee Erika Cannaday) were sent over the course of months with requests for Mr. Lear to be recertified – no response was provided.

 h. According to the GLAC in November 2019, the requirement was changed for contracts.

 i. Any contracts less than $700,000 did not require a COR, only a POC. The GLAC also stated, even if the COR Certification expired it would not matter as all contracts were below the dollar amount per the new Federal Acquisition Regulation ("FAR").

 j. All of Mr. Lear's contracts were less than the amount required to have a COR assigned.

5

    k. Mr. Lear had tried several times to connect with the GLAC to complete all training, but to no avail.

    l. He was in the process of turning over all his COR duties to the Administrative Officer, Frank Pease.

    m. But it was Plaintiff's understanding that once he did recommend a COR, the GLAC would advise if they were certified CORs.

    n. The GLAC makes the official determination and issues the official COR letter to Plaintiff and the COR.

    o. Given the number of responsibilities and pressure Plaintiff and the department were under with the pandemic, the high volume of call-offs, keeping the Hospital up to standards and the EPS site visit recommendations and deadlines, this was overlooked.

    p. Plaintiff made several requests to hire an individual who would assist Mr. Lear so that he could better manage the contracts.

23. The proposal stated that Plaintiff failed in his supervisory duty by providing equipment and supplies to the contractor because there was a mistaken assumption from the VA that the contractor would provide its own equipment and supplies.

24. Plaintiff rebutted this accusation with the following:

    a. The bid from the contract and the final Statement of Work ("SOW") stated that Emergency Management Services ("EMS") would provide all Supplies and Products.

    b. Thus, the information about equipment and supplies is inaccurate and invalid.

    c. In an email dated June 23, 2020, to the Asst. Director and Finance Asst. Chief, EMS requested money and approval to extend the current contract.

    d. The email states: "We (EMS) will continue to supply all equipment, chemicals etc."

  e. On a July 7, 2020 email, Assistant Director Jon Beidelschies (Plaintiff's supervisor) concurs with the proposal and adds that he spoke with the Director James Doelling, who is also in concurrence.

25. The proposal stated that Plaintiff created a conflict of interest when his wife's daughter was employed with the contractor.

26. Plaintiff rebutted this accusation with the following:

  a. Plaintiff did not tell his wife's daughter about an open position with the contractor.

  b. Plaintiff was not involved in any way with her application or acceptance of employment.

  c. However, according to OPM, during a pandemic health crisis, OPM can waive the prohibition on the employment of relatives (nepotism) when the skills and expertise of an individual could be essential to the agency in accomplishing its mission.

  d. During an emergency, agencies may hire individuals for up to 30 days (with a 30-day extension if the emergency need continues) without regard to the prohibition on employment of relatives.

  e. In the instant case, upon learning America's Best hired his wife's daughter in May 2020, Plaintiff's supervisor Mr. Biedelschies brought this to his attention.

  f. Initially, Mr. Biedelschies told Plaintiff this was not a concern.

  g. However, after further discussion, Mr. Biedelschies and Plaintiff agreed that, as a matter of propriety, it was best if the Contractor did not employ his wife's daughter.

  h. Plaintiff quickly notified the contractor, who notified his wife's daughter, and she promptly resigned. Her length of employment was so short, she did not receive a check for wages from the contractor.

27. The proposal stated that Plaintiff lacked candor in his interviews when he did not recall his wife's daughter worked for the contractor.

28. Plaintiff rebutted this accusation with the following:

   a. In his first Administrative Investigation Board "AIB" interview on August 17, 2020, Plaintiff was asked if Plaintiff knew anyone personally or had a relative who worked for AB.

   b. Plaintiff didn't recall his wife's daughter worked there as the period of time was so short and his thoughts were to the present timeframe. At the time, Plaintiff had been out on sick leave due to stress and anxiety.

   c. Plaintiff had already been diagnosed with severe depression and was seeing his doctor quite frequently for stress, lack of sleep, high blood pressure, headaches and diabetes.

   d. However, during his second AIB interview on August 21, 2020, Plaintiff was asked the question again and Plaintiff mentioned his wife's daughter had worked there for about a week and a half.

29. On the date Plaintiff was handed the proposed removal document, Plaintiff had 10 days to provide a rebuttal.

30. In his rebuttal, Plaintiff refuted every allegation made against him and included a comprehensive folder of exhibits to support his assertions.

31. After submitting his rebuttal, Plaintiff was informed the Hospital Director would provide an opinion on his removal in two weeks.

32. A week after providing his rebuttal, the Director issued a response affirming the decision to terminate Plaintiff on January 30, 2021 and included a hasty and perfunctory explanation for the decision.

33. As a result of this decision, Plaintiff began the process of retiring from the VA prior to his January 30, 2021 termination date.

34. Although Plaintiff had no intention of retiring, Plaintiff felt that this would allow him to best find employment elsewhere.

35. However, this was in no way a voluntary retirement.

36. Plaintiff's last day of employment was January 31, 2021.

37. Before and at the same time of his termination, the Defendant employed other workers who were cited for similar infractions but were not disciplined or terminated as a result of the infractions.

38. Other similarly situated, non-Black, non-disabled and younger employees who committed similar or more severe alleged infractions were either not terminated, received lesser forms of discipline or were not disciplined at all. These individuals were treated more favorably than Plaintiff under similar circumstances. Specifically:

   a. Chief of Nutrition and Food, Valerie Adegunleye. Ms. Adegunleye is a White female, approximately 40 years old, with no known disability who reported to the Assistant Director. In early 2016, the Defendant opened an investigation into a number complaints of cockroaches found in hospital food. The Defendant determined that leadership, like Ms. Adegunleye, was aware of the problem and yet did not successfully resolve the problem. Despite this negligence, Ms. Adegunleye was not disciplined or terminated.

   b. Chief of Patient Administrative Services, Chris Wirtjes. Mr. Wirtjes is a white male in his late 30's with no known disability. He reports directly to the Assistant Director. In 2015 a federal investigation was opened into the Hospital's use of secret wait lists in order to hide the true backlog of appointments to the hospital made by veterans. A complaint was also made that the wait times were manipulated to ensure that the staff received large bonuses, and as a result, patients were harmed. An OIG investigation identified Mr.

      Wirtjes as solely responsible for the wait time manipulation. He was not terminated but instead was put on administrative leave.

  c. In another incident with Mr. Wirtjes, a whistleblower at Defendant reported that indigent veterans and deceased veterans without next of kin were often left in the Hines VA morgue for over a month, sometimes longer, without proper postmortem care. In a 2016 letter to the US Senate, then US Senator from Illinois Mark Kirk mentioned that Mr. Wirtjes was identified in the whistleblowers' complaints as the person responsible for the blatant disregard of a veteran's right for a timely and dignified burial. Sen. Kirk then went on to mention that he had called for Mr. Wirtjes termination regarding the "wait list" incident and was again calling for the Secretary of the VA to terminate him. Mr. Wirtjes was not terminated.

  d. Chief of Engineering, Russell Thomason. Mr. Thomason is a white male in his 40's with no known disability. The Chief of Engineering reports to the Associate Director who reports to the Director. A 2016 investigation was conducted into mold in the Hospital operating rooms. The investigation concluded that years of flooding in the operating room had caused structural damage and could have led to compromised patient safety. Despite this finding, Mr. Thomason was not terminated.

## V. CLAIMS

### COUNT I – TITLE VII RACE (AFRICAN AMERICAN) DISCRIMINATION (TERMINATION), 42 U.S.C. §§ 2000E-2

39. Plaintiff re-alleges Paragraphs 1-39 and incorporates them as though fully set forth herein.

40. At all times, Plaintiff met his employer's legitimate job expectations.

10

41. Plaintiff was forced to retire on January 31, 2021 due to his employer's termination date of January 30, 2021..

42. The reason given was an alleged Failure to Effectively Perform Supervisory Duties, Conflict of Interest, and Lack of Candor.

43. Similarly situated employees outside of Plaintiff's protected class received more favorable treatment.

44. The Defendant's treatment of the Plaintiff was different than that of Chris Wirtjes, Valeria Adegunleye, and Russell Thomason, who were not discharged under similar circumstances.

45. Plaintiff has suffered ongoing and continuous damages due to his termination.

## **COUNT II – ADA DISABILITY DISCRIMINATION (TERMINATION), 42 U.S.C. § 12112**

46. Plaintiff re-alleges Paragraphs 1-46 and incorporates them as though fully set forth herein.

47. The Plaintiff is a disabled individual under the ADA, 42 U.S.C. § 12112.

48. Plaintiff suffers from severe stress and anxiety that affects his daily life.

49. Despite providing medical documentation about his disability, Defendant willfully discriminated against Plaintiff when it terminated him.

50. Plaintiff's disability was unrelated to his ability to perform his job duties.

51. The Defendant's stated reasons for its actions are pretext for unlawful discrimination based on Plaintiff's disability.

52. Based on information and belief, at the time of, and since Plaintiff's termination, Defendant employed other non-disabled workers who were provided reasonable accommodations and were treated more favorably.

11

53. Therefore, the Defendant terminated the Plaintiff because of his disability, a violation of the ADA, 42 U.S.C. § 12112(a).

54. Plaintiff has suffered ongoing and continuous damages due to his termination.

## COUNT III –ADEA DISCRIMINATION (TERMINATION), 29 U.S.C. § 621 *et seq.*

55. Plaintiff re-alleges Paragraphs 1-55 and incorporates them as though fully set forth herein.

56. At all times, Plaintiff met his employer's legitimate job expectations.

57. Plaintiff was forced to retire on January 31, 2021.

58. The reason given was an alleged Failure to Effectively Perform Supervisory Duties, Conflict of Interest, and Lack of Candor.

59. Similarly situated employees outside of Plaintiff's protected class (substantially younger) received more favorable treatment under similar circumstances.

60. The Defendant's treatment of the Plaintiff was different than that of Chris Wirtjes, Valeria Adegunleye, and Russell Thomason, who were not discharged under Defendant policy violations.

61. Plaintiff has suffered continuous and ongoing damages due to his termination.

## COUNT IV – Violation of Title VII 42 U.S.C. § 1983

62. Plaintiff re-alleges Paragraphs 1-62 and incorporates them as though fully set forth herein.

63. Under 42 U.S.C. § 1983, Plaintiff needs to prove that (1) the Defendant had an express policy that, when enforced, causes a constitutional deprivation; (2) the Defendant had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and

well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

64. At all times, Plaintiff had the right to be free from discrimination (based on race, disability status and/or age) in employment.

65. The Defendant has a policy of discrimination that is so permanent and well settled as to constitute a custom or usage within the force of law.

66. Further, Plaintiff's supervisor and the Hospital Director possessed final policymaking authority.

67. As a result of this constitutional deprivation, Plaintiff has suffered and continues to suffer ongoing damages.

**COUNT V – Violation of 42 U.S.C. §1981**

68. Plaintiff re-alleges Paragraphs 1-68 and incorporates them as though fully set forth herein.

69. Defendant's discrimination against Plaintiff in its accusations and procedural process of addressing Plaintiff's rebuttal was both subjectively and objectively offensive in that it altered the conditions of his employment.

70. Race was the cause of the harassment.

71. Defendant's conduct in alleging that a long-time employee violated its policies of Failure to Effectively Perform Supervisory Duties, Conflict of Interest, and Lack of Candor based on the events as they occurred and by not allowing Plaintiff a reasonable amount of time to even respond to the allegations, was severe or pervasive.

72. Plaintiff found Defendant's conduct humiliating, as he had worked at the VA for

13

nearly 40 years without incident.

73. Defendant's conduct was motivated by race as shown by the fact that Chris Wirtjes, Valeria Adegunleye, and Russell Thomason were not terminated under much more egregious circumstances, including even a U.S. Senator calling for their removal.

74. By the conduct described above, the Defendant intentionally deprived the Plaintiff of the same rights as are enjoyed by white employees to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with the Defendant, in violation of 42 U.S.C. §1981.

75. As a result of the Defendant's discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling him to compensatory damages.

## **PRAYER FOR RELIEF FOR ALL CLAIMS**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief to the extent permissible under applicable law:

a. Enter judgment in Plaintiff's favor and against the Defendant;

b. Award the Plaintiff actual damages suffered, including lost wages, back pay benefits, and other damages;

c. Award Plaintiff compensatory damages, including for his humiliation, pain, suffering and emotional distress;

d. Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

e. Award the Plaintiff front pay and/or other damages;

f. A writ of mandamus returning Plaintiff to his former position; and

g. Grant Plaintiff such further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiff demand trial by jury on all claims and issues that may be tried to a jury.

Dated: November 19, 2021.  Respectfully submitted,

**MALCOLM HEAGS**

By: /s/ Amy S. Cramer
/s/ Thomas M. Cramer
Amy S. Cramer (ARDC No. 6308140)
acramer@cramerlawchicago.com
Thomas M. Cramer (ARDC No. 6322468)
tcramer@cramerlawchicago.com
Cramer Law Group
180 N. LaSalle Street
Suite 3700
Chicago, Illinois 60601
312-924-0219